**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| MICHAEL MCGOUGH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. |
| v. | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| SAULSBURY INDUSTRIES, INC. | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT FOR DAMAGES

Plaintiff Michael McGough ("McGough") files this Complaint against

Defendant Saulsbury Industries, Inc. ("Saulsbury"), showing the Court as follows:

## INTRODUCTION

This case involves Saulsbury's purported termination of McGough for

"cause" to get out of paying McGough $325,000 of severance that is owed to him

under an employment agreement.  McGough has not engaged in any misconduct

that constitutes "cause."  To date, Saulsbury has only stated that the purported

cause is violation of expense account policies but Saulsbury has not provided any

specificity as to the alleged violations.  Ultimately, Saulsbury's attempt to label the

termination as one "for cause" is in bad faith and is being done to avoid paying

McGough $325,000 of severance.

As brief background, in 2017, Saulsbury hired McGough to grow its Nuclear Division. While employed by Saulsbury, McGough served as Vice President and Chief Nuclear Officer. On May 11, 2018, without any notice, Saulsbury terminated McGough via a telephone call. McGough's termination appears to be part of a reduction in force in Saulsbury's Nuclear Division.

During the termination call (and by email shortly after), Saulsbury offered McGough $50,000 of severance. McGough did not accept. McGough instead wrote Saulsbury asking the basis for his termination, and McGough's counsel also requested that Saulsbury pay McGough the full amount of severance owed. Saulsbury has yet to provide a sufficient factual basis for the "for cause" termination, and Saulsbury refuses to pay the full severance.

It is evident that Saulsbury has decided to implement a strategy of terminating for cause and then trying to negotiate down the amount of severance owed. That is unacceptable to McGough. Saulsbury owes McGough his full severance.

McGough now brings this suit to recover the amount of severance owed to him, plus attorneys' fees and interest.

## PARTIES, JURISDICTION, AND VENUE

1.

McGough is a resident of the state of Georgia.  At the time of McGough's employment with Saulsbury termination, McGough resided at 12537 Wexcroft Lane, Alpharetta, Georgia 30009.

2.

Per the employment agreement, McGough's base office for his employment with Saulsbury was at 12537 Wexcroft Lane, Alpharetta, Georgia 30009.

3.

Saulsbury is a Texas corporation with principal office address is 2951 E. Interstate 20, Odessa, TX, 73766.

4.

Saulsbury is registered to do business in Georgia and conducted business in Georgia, including but not limited through the work being done by McGough.

5.

Saulsbury may be served through its registered agent Corporation Service Company, 40 Technology Parkway, South #300, Norcross, Georgia 30092.

6.

Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(a) because there is complete diversity of citizenship between McGough and Saulsbury and more than $75,000.00, exclusive of interest and costs, is at stake.

7.

Venue is proper in the Northern District of Georgia under 28 U.S.C. § 1391 because Saulsbury conducted business in this district and a substantial part of the events, omissions, and acts giving rise to the claims herein occurred in this district.

**FACTS**

8.

In late Summer of 2017, McGough was considering several employment opportunities, including with established companies in the nuclear power industry. Saulsbury was not established in the industry and talked with McGough about hiring him to build their brand via McGough's extensive contacts, experience and relationships in the industry.

9.

McGough met with Saulsbury CEO Rick Graves and owner Bubba Saulsbury, who communicated Saulsbury's commitment to the nuclear power

industry.  McGough told them that it would take at least a year to gain traction in the industry.

10.

While McGough was excited to build something new at Saulsbury (as opposed to working on existing businesses for other firms who were well-established), McGough was concerned about passing up opportunities at established companies.

11.

Accordingly, McGough negotiated to have an employment security provision as part of this employment contract.

12.

On or around August 21, 2017, Marty Kunz ("Kunz"), Vice President of Human Resources for Saulsbury, sent an Offer of Employment letter to McGough that would set forth McGough's terms of employment, including an employment security provision.

13.

On or around August 21, 2017, McGough executed the Offer of Employment and returned it to Saulsbury.  A true and correct copy of the executed Offer of Employment (the "Agreement") is attached hereto as Exhibit A.

-5-

14.

The Agreement's "Employment Security" Provision stated:

**If your employment is terminated by the Company for any reason other than for cause during the first year of your employment, you will receive a one-time severance payment of $325,000.00**. During the second year of employment, if you are terminated for any reason other than for cause, you will receive a pro-rated portion of the $325,000.00, reduced by 1/12 for each month you are employed after your first year of employment. **Cause shall be defined as (i) a felony conviction, or (ii) gross negligence or willful misconduct, fraud, dishonesty, malfeasance, or gross incompetence that results in material damage to the company**. After the conclusion of your second year of employment, no severance payment will be made to you should your employment be terminated. Your employment relationship with the Company is "at will", and can be terminated at any time, for any lawful reason, the above-mentioned employment security terms notwithstanding. Any/all severance payments will be paid to you only in exchange for a signed Separation and Release Agreement provided by the Company at the time of termination.

(Ex. A, p. 4) (emphasis added.)

15.

On Friday, May 11, 2018, McGough had planned to have a budget related call with David Clem ("Clem") of Saulsbury. When the call began, however, Clem was on the call with Kunz. Clem terminated McGough's employment on the call effective immediately.

-6-

16.

Clem stated on the call that the termination was for cause for repeated violations of company expense account policies.  No further detail of the violations was provided on the call.

17.

During the call Kunz offered McGough a $50,000 severance payment.

18.

Shortly after the call, Kunz emailed McGough a Severance and Release Agreement, in which Saulsbury would pay McGough $50,000 of severance.

19.

McGough did not accept that $50,000 offer or Severance and Release Agreement.

20.

Also, shortly after the call, around 9:30am on May 11, 2018, McGough emailed Kunz asking for the reason of his termination and stating that it would be helpful to have the reason.

21.

Kunz replied to the email a few hours later, stating "Cause is clearly defined in your offer letter, so I refer you to that document.  As discussed today, we feel

-7-

very confident that we have reason to terminate you for cause, as defined in the letter." Kunz did not provide any additional explanation of what specific conduct by McGough constituted cause.

22.

On May 14, 2018, counsel for McGough wrote a letter to Saulsbury CEO Rick Graves ("Graves"), copying Kunz. The letter stated that Saulsbury owed McGough $325,000 of severance, that McGough would be willing to sign a separation and release in exchange for the payment, and that McGough expected the severance payment to be paid promptly. (A true and correct copy of the letter is attached as Exhibit B.)

23.

As of May 22, 2018, Saulsbury had not responded to the May 14, 2018 letter. Thus, on May 22, 2018, counsel for McGough wrote another letter to Graves, copying Kunz, seeking confirmation that Saulsbury would pay the severance owed to McGough. (A true and correct copy of the letter is attached as Exhibit C.)

24.

On May 25, 2018, Saulsbury finally responded via a letter from Saulsbury's General Counsel Frank Hunold, Jr.  (A true and correct copy of the letter is attached as Exhibit D.)

25.

The letter from Mr. Hunold provided that McGough was terminated "because he engaged in gross negligence, willful misconduct, and malfeasance and gross incompetence that resulted in material damage to the company" and that Saulsbury is not obligated to pay severance.  The letter did not indicate what specific conduct by McGough supposedly constituted gross negligence, willful misconduct, and malfeasance and gross incompetence.  Nor did the letter state how such conduct purportedly caused material damage to Saulsbury.

26.

McGough did not engage in any conduct that constituted cause.

27.

McGough is entitled to the full amount of his severance under the terms of his Agreement.

## COUNT I:  BREACH OF CONTRACT

### 28.

McGough realleges and incorporates by reference the preceding paragraphs as if fully set forth in this Count.

### 29.

Saulsbury entered into the Agreement with McGough.

### 30.

Saulsbury has breached the Agreement by, among other things, concocting "cause" for the termination, and repeatedly refusing to pay McGough the severance due under the Agreement.

### 31.

As a direct and proximate cause of Saulsbury's breaches, McGough has been damaged in an amount to be proven at trial but in any event no less than **THREE HUNDRED TWENTY-FIVE THOUSAND DOLLARS ($325,000).**

## COUNT II:  ATTORNEYS' FEES

### 32.

McGough realleges and incorporates by reference the preceding paragraphs as if fully set forth in this Count.

33.

Saulsbury has caused McGough unnecessary time and expense, has been stubbornly litigious, and has acted in bad faith.

34.

Saulsbury's bad faith actions have necessitated this lawsuit and McGough's expenditure of legal fees to recover money, which is rightfully owed to McGough.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment against Defendants, jointly and severally, as follows:

(a)  Compensatory damages to be determined at trial but in no event less than **THREE HUNDRED TWENTY-FIVE THOUSAND DOLLARS ($325,000)**;

(b)  Attorneys' fees, costs, and the expenses of litigation;

(c)  Prejudgment interest;

(d)  Such other relief as this Court deems just and proper.

This 31st day of May, 2018.

  */s/Jason S. Alloy*
Richard L. Robbins
Georgia Bar No.  608030
Jason S. Alloy
Georgia Bar No. 013188

Heather H. Sharp
Georgia Bar No. 671545
ROBBINS ROSS ALLOY BELINFANTE
   LITTLEFIELD LLC
999 Peachtree Street, N.E., Suite 1120
Atlanta, Georgia 30309-3996
(678) 701-9381

*Attorneys for Plaintiff Michael McGough*